(1 App. Div. 105; 14 Misc. Rep. 571.)

REYNOLDS v. MOORE et al.

(Supreme Court, Appellate Division, First Department.    January 24, 1896.)

REFERENCE—MISCONDUCT OF REFEREE—SETTING ASIDE REPORT.

On an application to set aside the report of a referee for misconduct, it appears that the referee conversed with defendant's counsel on the merits of the case, in the absence of plaintiff's counsel, saying that he thought he would have to decide in defendant's favor; that he was writing an opinion on the case, and plaintiff's testimony was unsatisfactory, and needed corroboration.    The referee further stated to defendant's counsel that the stenographer would look to him for payment of the bill.    The counsel objected to the bill as excessive, and refused to pay it.    About a month later, the referee reported in favor of plaintiff, and it then appeared that plaintiff had paid the stenographer's bill in full.    Held, that the report should be set aside.

Appeal from court of common pleas, special term.

Action by William J. Reynolds against the mayor, aldermen, and commonalty of the city of New York, Joseph Moore, and the Mt. Morris Bank, to foreclose a mechanic's lien, originally brought in the court of common pleas of the city and county of New York.    An order denying a motion to set aside the report of the referee for misconduct was entered June 3, 1895, and an appeal therefrom was taken to the general term of the court of common pleas, and was argued at the November term following, before Judges BISCHOFF and PRYOR.    The judges failed to agree, and a reargument was ordered. The reargument now comes on for hearing in the appellate division of the supreme court, to which all litigation pending in the superior city courts on January 1, 1896, was transferred by the judiciary order of the constitution of 1895.    Reversed.

On the hearing in the general term of the court of common pleas, Judges BISCHOFF and PRYOR each delivered an opinion (December 2, 1895), as follows:

BISCHOFF, J.    Where the fact of the operation of undue influence upon a referee is actually proven, the courts have never hesitated to set aside the report on motion, and this irrespective of the degree of the influence and its probable weight with the referee when rendering his decision.    But the charges must be established by affirmative proof, and no rule of policy renders a mere opening for surmise or suspicion of their truth sufficient to rebut the presumption of rightful action upon the official's part.    The reconsideration by him of an opinion informally expressed to counsel has little, if any, weight in the matter.    Gray v. Fisk, 12 Abb. Prac. (N. S.) 213; Ayrault v. Sackett, 17 How. Prac. 507.    In this case the charge made was met by the oaths of opposing affiants, and a conflict of evidence as to the fact resulted.    Apart from the evidence for the respondent, offered in the form of affidavits, uncontradicted testimony was given in open court in absolute disproof of the claim that the referee had any pecuniary interest

in the stenographer's fees, which alleged interest formed the basis of the charge made; and since the learned judge below, having the witness before him, was impressed with the truth of this evidence, we are not to hold that the contrary was to be taken as proven merely upon the controverted allegations of the opposing affidavits, showing circumstances which might be viewed either as supporting a suspicion of irregular action or the reverse. The whole question was one of fact, and the result arrived at in the original tribunal, that the moving party's position was not sustained by proof, should remain undisturbed.

Order affirmed, with $10 costs and printing disbursements.

PRYOR, J. The learned judge at special term refused to set aside the report of the referee, for insufficient evidence of "the charge of corruption and malfeasance." I do not understand that, by the law of New York, proof of a mercenary or improper motive in his decision is requisite to invalidate a referee's report. In Stebbins v. Brown, 65 Barb. 272, while a case was pending before a referee, he accepted a retainer in a cause from the plaintiff. Held, that on this ground alone the report should be set aside; the court saying that "we do not deem it important to inquire whether the decision of the referee was or was not affected favorably to the plaintiff by his retainer. * * * The rule should be inflexible that such a fact will, ipso facto, avoid the report of a referee. No other rule will protect the referee from the approach of temptation, or shield the administration of justice from the suspicion of impurity." In Yale v. Gwinits, 4 How. Prac. 253, where a referee, during an adjournment, personally examined a piece of machinery the utility of which was the subject of the litigation, and received explanation of its operation by two of plaintiff's witnesses, without the knowledge or consent of the defendant, a report in favor of the plaintiff was set aside; the court saying that "a referee ought not to place himself in a situation which may expose him to be influenced in his decision by conversations with third persons, in the absence of the parties." In Dorlon v. Lewis, 9 How. Prac. 1, speaking of private conversations of a referee with the attorney of a party, the court said: "A referee, under such circumstances, owes it to himself, not only to avoid all improper influences, but even the appearance of evil. Whether satisfied with the decision or not, no one should be left, for a moment, to question its fairness." In Roosa v. Turnpike Road Co., 12 How. Prac. 297, "although nothing in the case would justify the conclusion that the referee had, in the least degree, intended to swerve from an honest discharge of his duty," his report was set aside; the court saying: "All agree that the administration of the law must be pure and impartial. But it is scarcely less important that the conduct of those to whom its administration is intrusted should be such as to furnish to those who litigate no just ground of suspicion." In Carroll v. Lufkins, 29 Hun, 17, the court said that "whether or not the referee had been influenced or was likely to be influenced" by the fact alleged against him "is immaterial. He may be affected by it unconsciously; and the rule suggested should prevail, if for no other reason, to protect referees from temptation and the suspicion of having been influenced by improper motives." In Greenwood v. Marvin, 29 Hun, 99, in affirming an order setting aside the report of a referee, the court said: "Referees ought, like jurors, to be vigilant to avoid evil; to avoid taking a line of conduct which may affect their freedom of mind and neutrality. Ex parte treaties and conversations with either party as to any fact, point, or fee ought to be avoided." In Burrows v. Dickinson, 35 Hun, 492, in setting aside the report of a referee, the court at general term said: "Even the appearance of improper influence and bias must be avoided. If it is not, the confidence of the public in this mode of trial will be utterly subverted and destroyed, and injustice will likewise be promoted through the neglect, if not by the direct countenance and approval, of the courts themselves. That is only to be prevented by vindicating the right of the parties to an impartial and independent trial." In Livermore v. Bainbridge, 14 Abb. Prac. (N. S.) 227, the report of the referee, "a gentleman of high standing and character," was set aside because he had advised the party against whom he was about to decide to a compromise, and

this although his suggestion and its rejection by the unsuccessful party had no influence upon his mind; the court, per Davis, J., saying: "We think it improbable that the referee was affected by the mistake he made; but the interests of justice require that the general rules designed to prevent suspicion of impurity in its administration should be rigidly adhered to." In Leonard v. Mulry, 93 N. Y. 392, although there was "no evidence that, in reaching a conclusion in favor of the plaintiff, there was either interest or improper conduct on the part of the referee," the court of appeals says: "Nor was it necessary to inquire whether the referee would be influenced by the new relation which he sustained to the cause. He might be affected by it unconsciously; and the rule of exclusion has regard, not so much to the motives which in any given case may be supposed to bias the judge as to the apprehensions or even the over-anxious suspicions of litigants, and the preservation of confidence in the administration of justice." These authorities I adduce, not as adjudications upon the facts of this case, but as propounding the rule that should be observed in its determination.

What are the conceded facts of the case,—admitted, I mean, by the referee? That, at a private interview which he solicited, he said ,to defendants' counsel that he thought he would have to decide in defendants' favor, and he was then writing an opinion in the case; that he suggested the subject of stenographer's fees, and thereupon a dispute arose between the referee and the counsel as to which party should pay them, the referee contending that, by stipulation, the successful party should pay the whole fees, while defendants' counsel insisted that he should pay only half; that the referee said the successful party would have to pay the referee's fees and the stenographer's, and that the stenographer looked to him (the referee) for payment of his fees; that defendants' counsel stubbornly declined to pay more than half of the stenographer's fees; that this stenographer had been substituted by the referee instead of one already engaged by the parties; that, in the end, the referee gave his report to the plaintiff, who paid him all the fees of the stenographer. Assuming, as the referee alleges, that his change of opinion in the case was the effect of a subsequent brief from the plaintiff's attorney, and no wise influenced by the refusal of defendants' counsel to yield to his demand for payment of all the stenographer's fees, is the principle enunciated by the authorities any the less applicable? Is not the administration of justice in the case exposed to grave and well-founded suspicion? Is the defeated party without appearance of justification in the belief he avows that he has not had a fair and impartial trial? Do not the interests of justice entitle him to a hearing before a tribunal whose decision shall not be challenged by circumstances of such sinister import as infect the report of this referee? If the plaintiff has a valid cause, he can lose nothing by recourse to another court, of unquestioned and unquestionable impartiality. If the defendants' case be infirm, the clearer the integrity of the judge who determines it the less reason to apprehend its prevalence. Independently, however, of the interest of parties, the public is profoundly concerned that the distribution of justice by its courts should be exempt even from the suspicion of illicit influence.

I am for reversing the order, and setting aside the report.

Argued before VAN BRUNT, P. J., and BARRETT, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Alexander Thain, for appellant.

James Kearney, for respondents.

BARRETT, J. The discussion at special term was solely upon the question whether the referee had been proved guilty of corruption "by very clear and convincing proof." The learned judge examined the facts carefully, and came to the just conclusion that the case on that head had not been made out. The error consisted in limiting the consideration of the facts to this charge. The real question here was not whether the referee was guilty of actual corruption, but

whether the fairness of his decision was justly questioned.   It is the settled law of this state that any indiscreet action of a referee, from which improper inferences can be drawn, suffices to set aside his report.   Yale v. Gwinits, 4 How. Prac. 253; Dorlon v. Lewis, 9 How. Prac. 4; Roosa v. Turnpike Road Co., 12 How. Prac. 297; Greenwood v. Marvin, 29 Hun, 99; Carroll v. Lufkins, Id. 17; Burrows v. Dickinson, 35 Hun, 492; Livermore v. Bainbridge, 14 Abb. Prac. (N. S.) 227; Leonard v. Mulry, 93 N. Y. 392.

Our courts have invariably taken an elevated view of this question. Thus, in Roosa v. Turnpike Road Co., supra, Harris, J., concluded his opinion with this remark:

"All agree that the administration of the law must be pure and impartial. But it is scarcely less important that the conduct of those to whom its administration is intrusted should be such as to furnish to those who litigate no just ground of suspicion."

In Livermore v. Bainbridge, 44 How. Prac. 363, Justice Fancher quotes with approval an observation which was made in Dorlon v. Lewis, as follows:

"A referee owes it to himself, not only to avoid all improper influences, but even the appearance of evil."

In the same case, upon appeal, Davis, J., said:

"The interests of justice require that the general rules designed to prevent suspicion of impurity in the administration of justice should be rigidly adhered to."   14 Abb. Prac. (N. S.) 232.

In many of the cases the integrity of the referee was unquestioned, while in one, at least, his high character was adverted to.

In the present case the conduct of the referee was not only indiscreet, but improper.   Upon his own statement, he conversed with the defendants' counsel upon the merits of the case, in the absence of the plaintiff's counsel.   This of itself was an impropriety.   What he said, however, was grossly improper, namely, that "he thought he would have to decide in defendants' favor on the law point"; that "he was writing an opinion on the case"; and that the plaintiff's testimony "was given in an unsatisfactory manner, and needed corroboration."   This is the referee's own account of his language, while the attorney's version of what transpired characterizes the language used as much more decided and emphatic.   The attorney's version need not, however, be scrutinized, as, upon the referee's own showing, his conduct was inexcusable.   At this very interview, too, there was a difference between the referee and the defendants' attorney with regard to the stenographer's fees.   This was significant in view of the referee's statement that the stenographer looked to him for payment of the bill.   It was also significant in view of the fact that this stenographer was selected by the referee after a stenographer previously agreed upon by the parties had been discharged by him.   The referee says, to use his own language, that he "disputed" this attorney's "evidently forced, unjustifiable construction" of a stipulation which had previously been entered into with regard to stenographer's fees.   The attorney says that he objected to the bill as excessive, and that he also claimed that his client was bound to pay but one-half

of these fees. The referee insisted that the attorney was liable for the whole bill. The attorney finally offered to tax the stenographer's bill, and then to pay the defendants' share of it. Subsequently, the stenographer called upon the attorney, but the latter adhered to his position; namely, that he would only pay one-half of a proper bill. There this matter rested until not quite a month later, when the referee reported against the defendants, and then it was learned that the plaintiff had paid in full the stenographer's bill to which the defendants' attorney had so persistently objected. I say in full, but, to be precise, the bill was $326.54, and the payment $325. It was entirely natural, under these circumstances, that even a professional mind should view the referee's change of opinion with suspicion. But what must the client have believed? And what, indeed, was he quite justified in believing? Surely, that the referee was "with him" at the time of the interview with his attorney, and that the opinion which the referee then said he was writing was unquestionably in his favor. What must he have thought when he subsequently learned that the referee had completely changed his mind after the dispute regarding the stenographer's fees? When he learned, too, that the plaintiff had not been as injudicious as he, and had paid the whole bill without question? He was certainly justified in the belief that there was some sinister connection between his counsel's persistent attitude with regard to the stenographer's fees and the referee's extraordinary change.

Our conclusion is that the referee's action was not only indiscreet, but improper, and that his report cannot be permitted to stand. Few laymen could be brought to believe, upon such a state of facts, that they had had a fair trial; and the administration of justice would fall into disrepute were the court to sanction indiscretions and improprieties, tending to weaken the faith of the lay mind in its purity.

The order appealed from should be reversed, with costs, the motion to set aside the report granted, and the order of reference vacated. All concur.