(94 App. Div. 429.)

SMITH v. DUNN et al.

(Supreme Court, Appellate Division, First Department. May 13, 1904.)

1. REFERENCE—IMPARTIALITY OF REFEREE—FEES—ASKING FEES IN EXCESS OF STATUTORY ALLOWANCE.

Code Civ. Proc. § 3296, declares that a referee is entitled to $10 for each day spent in the business of the reference, unless, at or before the commencement of the trial or hearing, a different rate of compensation is fixed by the consent of the parties. *Held*, that where a referee requested that there be a stipulation for fees additional to the statutory ones, which was refused by one of the parties, such party was entitled to an order appointing a new referee.

Appeal from Special Term, New York County.

Action by Terence A. Smith against Thomas J. Dunn and another. From an order denying a motion to appoint a new referee, defendant Thomas J. Dunn and another appeal. Reversed.

See 86 N. Y. Supp. 307.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

Jacob Marks, for appellants.
William B. Hornblower, for respondent Mayo.
Jacob Fromme, for respondent Smith.

INGRAHAM, J. In this action, which was brought for an accounting between copartners, an interlocutory judgment was entered directing an accounting and appointing a referee to take and state the accounts of the copartnership. This accounting was brought on before a referee on September 28, 1903. From the affidavits upon which this application was made it appeared that, as soon as the counsel for the defendants Dunn arrived in the referee's office, the referee made this statement in the presence of counsel for the plaintiff and counsel for the defendants Dunn:

"It is customary for a referee, before proceeding with a reference, to enter into some agreement as to his fees. I have thought over the matter, and

think that $15 a session would be about right. I have to neglect my other business to give attention to this, and I think it is about fair that I be allowed that sum."

The referee then turned to counsel for the plaintiff, who made no objection to the referee's request. The referee then turned to counsel for Dunn, who in reply said that he had no authority to consent to the allowance of any more than the statutory fees, but he would see his clients and find out whether they would authorize him to consent to any more. The question as to whether a stenographer was to be employed was then discussed, and counsel for Dunn said that he did not know whether a stenographer would be necessary, and that he could not then consent to a stenographer being employed. At the next session of the reference, on October 28th, the referee asked counsel for Dunn whether he had seen his clients as to the referee's fees, to which the counsel replied that he had, and that they would not consent to any more than the rate prescribed by law, and that his clients would not bind themselves to pay any part of a stenographer's fees. Counsel for Dunn states in his affidavit:

"I believed I had already incurred the displeasure of the referee, and, desiring as far as possible to smooth matters, asked him what suggestion he had to make with regard to the stenographer's fees. He suggested that a stipulation be made that a stenographer be employed by the referee, and that his bill, together with the referee's fees, be paid by the prevailing party, and taxed as a disbursement by such party. I stated in substance that I would not consent to such an arrangement, because the defendants Dunn expected to be the prevailing parties, and expected to show that the plaintiff and Mahon were entitled to nothing and had no claim, and as the plaintiff was financially irresponsible, and a judgment for costs could not be collected against him, and as the defendants Dunn were responsible, I did not wish to bind my clients, if they were the prevailing parties, to take up the report and pay the referee's and stenographer's fees. The referee then inquired what security he had, without the stipulation, for the payment of the referee's and stenographer's fees, and, after some further conversation, stated that common decency should make counsel consent to the employment of a stenographer, and secure the referee and stenographer for their fees. I stated that I would not change my position, and, if the referee did not like my suggestion as to how he could secure himself, the furthest I would go would be to provide that whoever took up the report should pay the fees, and, if my client did not choose to take it up, they would not be bound."

The referee then dictated to the stenographer a stipulation. Counsel for the defendants Dunn then states·in his affidavit:

"From that time on, the referee, in my opinion, has displayed a feeling of bitterness towards me, and has, in my opinion, become biased and prejudiced against me and my clients, and has to my mind acted as if he placed very little, if any, confidence or faith in statements made by me or my clients regarding matters which have been presented to him, and has in my judgment, at various times, acted as if he were a counsel for the plaintiff rather than a referee."

On October 29, 1903, the next session of the reference, there appeared upon the stenographer's minutes a stipulation by which a stenographer was to be employed, and his fees were "to be paid by the prevailing party, in addition to the referee's fees, and taxed by the prevailing party as a disbursement in the action." When the form of this stipulation was called to the attention of the counsel for Dunn, he stated to the referee that the stipulation as found in the minutes was

not correct, was not as he agreed, nor as given to the stenographer by the referee, and that he desired it changed to conform to what had been agreed upon. Counsel for the defendants Dunn in his affidavit states:

"The referee disputed my statements, and, turning to the stenographer, said in an angry and passionate tone: 'Put this on the record: "Counsel for defendants Dunn rescinds the stipulation entered into at the hearing yesterday."' To which counsel for the Dunns stated: 'Mr. Marks states that he does not repudiate the stipulation of yesterday, but insists that there is an error in the stenographer's minutes in having inserted the words "to be paid by the prevailing party" in the stipulation; and I say that I expressly objected yesterday to those words going in the stipulation, and believe the minutes will show it—the original minutes—and I am willing that the stipulation as found on page 4 shall stand, except that words on the fourth line from the bottom, "to be paid by the prevailing party," into the third line from the bottom of the page, be stricken from the stipulation, and I insist that I made that objection yesterday.'"

The affidavit then continues:

"As I saw the referee was very much incensed at my statements, and kept on insisting that he remembered the stipulation was made as the stenographer had it in the minutes, and he said he would let the record show that I had made a stipulation and then attempted to rescind it, I therefore allowed it to stand that the prevailing party tax it as a disbursement, without stipulating that the fees be paid by the prevailing party. I stated that agreeing that the prevailing party might tax the fees did not bind the prevailing party to pay them, and the plaintiff's attorney and the referee, after some consultation and discussion, decided that they did not see much difference between the stipulation as the stenographer had reported it on page 4 of his minutes—and which I claimed was wrong—and the form of the stipulation as I was willing then to amend it. I believed the interests of my clients at that time demanded that I should in some way endeavor to submit to the referee's views in order not to further prejudice him against me and them, and I believed that if I insisted on my rights that the stipulation as recorded in the minutes was wrong, and that the referee was wrong in saying that that stipulation had been made, the referee would become still more biased and prejudiced against me and my clients, I having already formed an opinion that the question of the referee's fees and my refusal to pay $15 a session was interfering with the calm and impartial manner in which I believed a referee should conduct a trial."

This affidavit of counsel for Dunn as to what happened before the referee was corroborated by the affidavits of his clients.

In answer to the application, the affidavit of the referee was presented to the court, which differs in some particulars from those of the defendants Dunn and their counsel, and we accept the statement of the referee as a correct statement of what happened before him. The referee says that at the first hearing, on the 18th of September, when counsel for the respective parties were present:

"I made the customary suggestion that an agreement as to my fee be stipulated, and said that I thought $15 per hearing would be fair. To this Mr. Marks answered that his clients objected to incurring any expense in the reference whatever; that they denied that there was anything due the plaintiff; that the plaintiff was irresponsible, and that he had no authority to make such a stipulation. I waived my suggestion, and acquiesced in the statutory fees. At the same hearing I also asked that, as there would probably be considerable testimony, the parties stipulate that a stenographer take the same, to which Mr. Marks made practically the same answer as above. This suggestion as to a stenographer, at the time, I also waived. At the next hearing, to wit, October 28, 1903, I asked Mr. Marks if he had consulted his clients as to his authority to enter into the foregoing stipulation, and he stated that

he had done so, and they objected to any stipulation as to referee's fees, but were willing to stipulate that a stenographer be employed, and the stipulation was taken on the record, but was not dictated by me (as is alleged in Mr. Marks' affidavit), it being arranged by counsel, my sole interest being that I was not to be personally liable for the stenographer's fees. This was done at the time, rather, as I thought, in a pleasant way, and without the slightest display of passion or prejudice on my part, and I deny that I was in a bad humor at the time, and I affirm that throughout the reference I have strictly abided by my oath, and have treated all parties and their counsel with courtesy and respect, and have felt neither biased nor prejudiced, and my course has the full approval of my conscience."

The referee further says that at the hearing on October 29, 1903, Mr. Marks objected to some words in the stipulation for a stenographer—

"Which engendered an argument between counsel; and as I did not at first understand Mr. Marks' position—that he sought to have a correction in the stipulation made—I understood from his manner and words that he had reconsidered entering into such stipulation, and wished to proceed in future without the services of a stenographer. My remark that he rescinded the stipulation was in a dignified tone, and was not intended as a reflection upon Mr. Marks in any way. It was intended to apply simply to future hearings, and the word 'rescind' was noted upon the record to show that a stenographer was to be dispensed with in future. I deny the allegation in Mr. Marks' affidavit that my tone or manner showed marked displeasure and disappointment. Mr. Marks stated at all of these hearings that his clients were determined not to incur any expense whatever in the proceeding, as the plaintiff was irresponsible, and that they, being solvent and responsible, could not be reimbursed from him if they were successful. I stated that I would waive my suggestions, and the matter of the stipulation ended. At this time there was apparently no ill feeling on the part of any one, and I certainly did not, as I never have, during the course of the reference, felt the slightest prejudice or bias, as I consider my oath of office and my honor paramount to any petty pecuniary consideration."

The referee further says that the remark quoted as made by him—

"On the second line from the last, page 4 of Mr. Marks' affidavit, that 'common decency should make counsel consent to a stenographer,' is not correct. I made use of no such expression. My language was that it was usual to stipulate for the employment of a stenographer, as otherwise the proceeding would be very cumbersome and unnecessarily prolonged."

The referee further denied that he had displayed feelings of bitterness against the defendants Dunn or their counsel, or that he had become biased or prejudiced against them, or that he had acted more as if he was counsel for the plaintiff than referee. He further denies all of the charges in the affidavit of counsel for defendants Dunn which tended to show any prejudice or ill will towards either the defendants Dunn or their attorney, and the observations alleged to have been made by the referee which showed petulance or prejudice.

Absolving the referee from any intention to do wrong, it nevertheless remains that a situation was created which might have justified a conclusion that he was prejudiced or hostile to the party refusing to comply with the request. Although this may have been the result of a misunderstanding, it was evidently created by the act of the referee himself; and the question is then presented whether, under the circumstances disclosed, the defendants should be compelled to continue the trial of this case before him. It would appear from the record that

this interlocutory judgment was entered upon the pleadings. The only matter thereafter involved was an accounting to be taken before the referee. He acted in that capacity as a judicial officer, whose findings upon questions of fact which were in dispute would be to a large extent conclusive, and he was required to determine questions of law that would arise as the reference proceeded. It is hardly necessary to say that either party to such a proceeding is entitled to an absolutely disinterested referee, who will determine the questions with impartiality. The fees of a referee are regulated by section 3296 of the Code of Civil Procedure, which provides that:

"A referee in an action * * * is entitled to ten dollars for each day spent in the business of the reference; unless at or before the commencement of the trial or hearing, a different rate of compensation is fixed, by the consent of the parties * * * manifested by an entry in the minutes of the referee, or otherwise in writing, or a smaller compensation is fixed by the court or judge in the order appointing him."

This provision of the Code does not contemplate that the referee is to fix his compensation, or that the parties to an action which is proceeding before a referee are to be placed in a position of either having to grant or refuse an application by the referee to be allowed fees in excess of those fixed. The parties have the right to stipulate as to the amount of fees that a referee is to receive, but in the absence of such stipulation the fees of the referee are fixed by the statute. When a member of the bar is requested to act as referee, it is entirely within his right to refuse to act for the legal fees, and the question for the counsel to determine is whether they are willing to stipulate that the referee be allowed to charge such an additional fee as will induce him to act; but when the referee has taken such a position, and requested counsel in the case to agree that his fees be fixed at a rate exceeding that allowed by the Code, he has then placed himself in a position in which it is manifestly improper to proceed with the reference in case either of the counsel refuses to stipulate for the increased compensation. The state is bound to furnish to every litigant not only an impartial judge, but a judge who has not by any act justified a doubt of his impartiality; and, when a referee has placed himself in such a position that a party to an action is justified in feeling that he is not impartial, the party entertaining such a conviction should not be compelled to continue the trial of the case before the referee. His feeling on the part of a party to the action must be based upon some act of the judicial officer in his conduct of the litigation; but where it appears that the conduct of the officer has been such as to justify a feeling that he is to some extent prejudiced, then the due and orderly administration of justice necessarily requires that the referee should withdraw from further connection with the case.

Assuming that the referee's statement of the occurrence in this case is correct, and there was no prejudice in his mind, and that he did what he understood was usual for referees to do, I cannot read these affidavits without being satisfied that the result of the act of the referee in asking for additional compensation at the first session, when counsel for the defendants Dunn stated that he would not consent, and stated his reason for it, induced in the minds of the defendants Dunn and their

counsel the conviction that refusing to consent to this increased compensation to the referee, and refusing to consent that the prevailing party was to take up the referee's report and pay his fees, had prejudiced the referee against them. In this condition, if the referee decided in favor of the plaintiff, he would get his fees. If he decided in favor of the defendants and they concluded not to take up the report, he would not get his fees, if plaintiff was, as defendants claimed, irresponsible. And thus the defendants had, by refusing to stipulate as requested by the referee, not only prevented the referee from obtaining fees in excess of those allowed by the Code, but to some extent made it doubtful whether the referee would be paid if he decided in favor of the defendants Dunn. This position would justify the referee in refusing to proceed unless he was paid his fees as the reference proceeded, but the defendants Dunn were placed in the position of having to make a stipulation which seemed to them to impose a liability which was unjust, or assume an attitude towards the referee of preventing him from securing a pecuniary advantage.

To justify the granting of this application, it is not necessary that we should find that the referee was prejudiced, or that any act of his showed prejudice against these defendants. But when he asked these parties to consent that his compensation be in excess of that allowed by law, he placed himself in a position which allowed a party refusing that consent to feel that, as he had stood in the way of the referee receiving a pecuniary advantage, the fact of the refusal would influence the referee in his action during the litigation. That the defendants Dunn and their counsel believed that the referee was prejudiced against them is perfectly apparent from these papers; and the conviction was the natural result of the act of the referee in requesting additional compensation and that the defendants stipulate to be liable for it; and such a conviction was not, under the circumstances, unreasonable.

As was said by Mr. Justice Barrett in Reynolds v. Moore, 1 App. Div. 105, 37 N. Y. Supp. 72:

"The real question here was not whether the referee was guilty of actual corruption, but whether the fairness of his decision was justly questioned. It is the settled law of this state that any indiscreet action of a referee, from which improper inferences can be drawn, suffices to set aside his report."

And the remarks of Mr. Justice Harris in Roosa v. The Turnpike Co., 12 How. Prac. 297, were quoted with approval:

"All agree that the administration of the law must be pure and impartial. But it is scarcely less important that the conduct of those to whom its administration is intrusted should be such as to furnish to those who litigate no just grounds of suspicion."

In Dickinson v. Earle, 63 App. Div. 134, 71 N. Y. Supp. 227, in speaking of this position in which a party is placed who has refused to consent that the referee's compensation should be in excess of that allowed by law, we said:

"It can be seen in what an unfair position this placed the attorney for the adverse party. It was entirely immaterial to the plaintiff what the fees of the referee would be, as he would not have to pay them. And yet, if the defendants refused to consent to such a stipulation, they were required to try the case before a referee after they had refused to consent that his compen-

sation should be in excess of his legal fees, and the amount of whose compensation might depend upon the party in whose favor he decided the case; as the defendants, having refused to consent to the enlarged compensation, would not pay more than the legal fees, while the plaintiff, having expressed a willingness to consent that the referee should fix his own fees, would not be likely to object to any charge that the referee might make."

The courts of this state have uniformly held that any action of a referee from which an inference can—not "must" or "should"—be drawn which affects his impartiality, is sufficient to justify the court in appointing another referee in his place, or setting aside his report when one has been made (Reynolds v. Moore, supra, and cases there cited); and we think that a request of a referee for additional compensation, refused by one of the parties to the litigation, with the subsequent renewal of the request, brings the case within this rule. Assuming that the referee understood that he was only following a custom in relation to referee's fees in the county of New York, and that he did not think that there was any impropriety in his action, we are satisfied that he placed himself in a position from which the parties refusing to consent to an increased compensation could infer that his rulings would be influenced by their refusal to comply with the referee's request as to his fees, and that, having placed himself in that position, he became disqualified from further acting as referee.

It follows that the order appealed from should be reversed, and the motion granted, without costs, and the case remitted to the Special Term to appoint a new referee. All concur.