Isaac Voron, Plaintiff, *v.* Sabbatia Chait et al.,
Defendants.

(Supreme Court, New York Special Term, October, 1917.)

Referees — rights of — appointment of — fees — reference — estoppel —
motion to vacate report of referee when granted.

> The right of a referee appointed to take and state the
> accounts of the parties to an action, to fees, does not accrue until
> he has completed the reference and filed or delivered his report.
>
> The conduct of such a referee in bargaining with the parties
> for his fees and demanding payment thereof in advance of the
> time when he is entitled to them tends to commercialize the
> administration of justice and to bring it into contempt and
> therefore cannot be tolerated.
>
> Where it appears that when the referee received his third
> payment on account of his fees it was distinctly understood
> that he was not to ask for a further fee until his report was
> completed, but he did, and his request was refused, defendant,
> by his participation in the arrangements for the payment of
> the referee's fees, is not estopped from moving to vacate his
> report and the motion will be granted.

Motion by plaintiff to confirm report of a referee
and motion by defendant Chait for removal of referee
and vacation of his report.

Grossfield Bros. (Alexander Thain, of counsel), for
plaintiff.

Coss & Apfel, for defendants.

Greenbaum, J. Plaintiff moves for the confirmation
of the report of a referee who had been appointed to
take and state the accounts of the parties, and at the
same time the defendant Chait moves for the removal
of the referee and the vacation of his report. The

facts bearing upon the alleged misconduct of the referee will be briefly stated. At the opening of the reference, and before any testimony had been taken, the question of the referee's fees was discussed. The referee suggested that in view of the importance of the case he should receive a larger fee than ten dollars an hour, which was the amount proposed by counsel. Plaintiff's counsel asserts that he then suggested that the referee's fees could be paid from time to time out of a fund belonging to the defendant Voron & Chait, Inc., in which both parties were interested. On the other hand, the defendant claims that plaintiff's counsel remained mute when the request for increased fees was made and put the burden upon him to make objections thereto. Without now passing upon this disputed question of fact, the stenographer's minutes disclose a stipulation to the following effect: "It is stipulated that the referee's fees shall be $10 per hour for all time necessarily spent in the business of the reference and $10 for each adjournment, * * * the fees in the first instance to be paid out of the funds of the corporation and determined later which of the parties, if any, shall be charged with them." It will be observed the stipulation does not state that the referee's fees were to be paid from time to time during the progress of the reference. The evidence, however, undisputably shows that three payments aggregating $1,000 were in fact paid to the referee during the course of the reference on account of his fees upon the consent of all the parties. The first payment was made pursuant to a request embodied in a letter from the referee addressed to plaintiff's attorneys under date of May 24, 1915, in which he states: "Will you kindly arrange to let me have $300 on account of my services as referee in the Voron v. Chait matter?" After the receipt of this

initial payment the referee wrote a letter to the defendants' counsel under date of July 28, 1915, in which he said: " Following the intimation of counsel, I shall be pleased to receive a check for $400 on account of my services as referee in the above matter." The payment was made as requested. It cannot be doubted that the "intimation of counsel " did not emanate from defendants' counsel. On August 26, 1915, the referee wrote a letter to defendants' attorneys, in which he stated: " Will you kindly have your client sign a check to my order for $300 on account of fees due me as referee in the above entitled matter and pursuant to stipulation herein? " A check for $300 was thereafter forwarded to the referee inclosed in a letter from defendants' attorneys, dated September 27, 1915, which reads as follows: " We inclose herewith the check of Voron & Chait, Inc., to your order for $300 for fees in this matter as requested. As the bank account of the corporation is getting low, and as there are other claims, we are sending this check on the understanding that you will not ask further fees until the time comes to take up the report in this matter, which, as we recall, you kindly stated was satisfactory to you." After the acceptance of the check upon the ostensible " understanding " expressed in this letter, the referee wrote a letter, under date of November 29, 1915, addressed to both attorneys, in which he stated: " I would appreciate it if you could arrange to let me have a check for $300 on account of my fees in the above entitled matter. Trusting to hear from you, I remain," etc. Defendants refused to comply with this request. Subsequently the referee prepared his report. In addition to the foregoing facts the moving papers of defendants set forth alleged acts of unfairness and bias towards the defendants' counsel. These allegations are denied.

It is unnecessary to determine whether these charges have merit in view of the conclusions reached by the court. The Appellate Division of this department has recently held in *Ament* v. *Schubert Piano Co.,* 172 App. Div. 423, Page, J., writing: " The demanding and receiving his (referee's) fees prior to the completion of his decision was even more reprehensible. It is well settled that under ordinary circumstances a referee's right to his fees does not accrue until he has completed the reference and filed or delivered his report. (*Hebard* v. *City of New York,* 137 App. Div. 752.). He should not have requested nor accepted payment so long as there remained any duty of a judicial nature for him to perform." Under our conception of the relation of the judge to the litigants the court cannot for a moment tolerate the conduct of a referee bargaining for fees with the parties to the action on trial before him and demanding payment therefor in advance of the time when he is entitled to them. Such conduct tends to commercialize the administration of justice and to bring it into contempt. It also tends to degrade the legal profession in encouraging counsel to curry favor with the referee by the suggestion of enlarged fees or a ready acquiescence in the requests of the referee in that behalf. The plaintiff, however, insists that the defendant is estopped from moving to vacate the report by reason of his participation in the arrangement for the payment of the referee's fees. It doubtless was the duty of counsel to refuse to proceed with the reference under the conditions here disclosed and promptly to apply to the court for the removal of the referee. And it is ordinarily true that one who has sought to benefit by his own improper acts should not be relieved from the adverse consequences that may result therefrom. But it seems to me that the maintenance of the purity

· 24

and integrity of courts of justice forbids the application of the doctrine of estoppel in a case like this. The interests of the public in the administration of justice transcend those of the parties who helped to create an intolerable situation, for which they themselves are to blame. But even if it be assumed that the rule of estoppel were applicable to parties who have acquiesced in improper requests of a referee, it seems to me that the facts here established would exclude the application of the rule. It appears that when the referee received his third payment it was distinctly understood that he was not to ask for a further fee until his report was completed. Notwithstanding this he made a request before his report was filed for a fee, which was refused. In the dissenting opinion in *Oakley* v. *Aspinwall*, 3 N. Y. 561, it was said: " If the counsel was not estopped by the law of the land from making such a motion, he must allow me to say, that the laws of honor and decency forbid it." That, however, was a case in which a motion was made to set aside a judgment upon the ground that one of the judges who participated in hearing an appeal was disqualified by statute from sitting therein by reason of his consanguinity to one of the parties, although all the parties knew of his disqualification and expressly solicited him to act. The majority opinion of the court in effect held that jurisdiction could not be conferred even upon consent. It is thus evident that the minority opinion had reference to a situation in which the decision of the judge who sat was not open to the suggestion of even unconscious bias and in which there was no element involving judicial impropriety or misconduct. The defendants refused to comply with the referee's request for a further advance payment of fees. It is therefore difficult to say whether the referee may not have been

unconsciously influenced against them because of their refusal to comply with his request. It has been repeatedly held that it is not necessarily to be assumed that a referee has been influenced in his decision adversely to the party who demurred or objected to a referee's request. The test is, may the fairness of his decision be doubted in view of his misconduct or indiscretion? *Reynolds* v. *Moore,* 1 App. Div. 105; *Dickinson* v. *Earle,* 63 id 134; *Smith v. Dunn,* 94 id. 429. The court deeply regrets to be obliged to set aside a report based upon upwards of two thousand pages of testimony and in which large sums have already been expended for referee's and stenographer's fees, but the parties by their own acts have created a condition which leaves no alternative but to set aside the report. It may be proper to add that in granting this motion the court does not intend to intimate that the findings of the referee are not justified. They have simply not been passed upon.

Ordered accordingly.