MILES LABORATORIES, INC., Respondent, *v.* AMERICAN PHARMACEUTICAL COMPANY, INC., and PHILIP KACHURIN, Appellants.

First Department, January 10, 1941.

*Albert T. Scharps* of counsel [*Louis Barnett*, attorney], for the appellants.

*Clifton Cooper* of counsel [*Edward S. Rogers* with him on the brief; *Rogers, Hoge & Hills*, attorneys], for the respondent.

*H. R. Korey*, for the referee.

MARTIN, P. J. The plaintiff instituted an action to restrain the use by defendants of the designation " Aphco Alkaline Seltzer " for a medicinal product, claiming it constituted unfair competition with its product " Alka-Seltzer." An interlocutory judgment was rendered in favor of the plaintiff and a referee was appointed to take and state the account of the profits of the defendants and the damages sustained by the plaintiff. The interlocutory judgment provided that plaintiff was to recover from the defendants the expenses of the accounting reference, including " the Referee's fees, in an amount to be approved by the Court." Section 1545 of the Civil Practice Act fixes the fees of referees generally at twenty-five dollars a day unless " a different rate of compensation is fixed by the court or a judge or justice thereof, or by consent of the parties  *   *   *."

The referee commenced the hearings on November 29, 1937, and they were not completed until May 31, 1940. The report of the referee, dated August 21, 1940, was delivered to the office of the defendants' attorney on August 23, 1940. It recommended an award to the plaintiff of $24,428.87, and then provided: " My fees should be added to this when fixed by the Court and judgment entered for the total sum thus determined  *   *   *."

The defendants moved for an order vacating the report of the referee, setting aside all portions of the interlocutory judgment concerning the appointment of said referee and for the appointment of a new referee. The affidavits submitted on the motion raised a question as to the substance of a conversation between the referee and one of the attorneys representing the defendants. The court at Special Term accepted " the Referee's statement as to what transpired," and denied the motion.

The defendants' motion to vacate the report of the referee and for additional relief was based upon the claim that the referee had

disqualified himself from acting as referee or rendering any decision because of his demand, prior to the filing of his report, that the defendants consent to the fixing of his fee in the sum of $7,000, instead of the amount to be approved by the court in accordance with the provisions of the interlocutory judgment under which he was appointed. As a further ground for granting the motion the defendants alleged that the referee notified the attorneys for the defendants of the assignment to a bank of his fee as referee before any fee was due and directed that the sum of $1,800 be paid to the bank.

The attorney of record for the defendants and the trial counsel allege that they called upon the referee at his office on June 17, 1940, when they delivered their main briefs and exhibits, and again on June 25 or June 26, 1940, when they delivered their reply brief. During the latter visit they claim the referee said he wished them to agree upon his fees and Mr. Scharps, the trial counsel for defendants, said that such a matter should be discussed after the report had been filed. Mr. Scharps, however, agreed to see the referee the following week, at which time Mr. Barnett, the attorney of record for defendants, would be away from the city on an automobile trip through the southern part of the United States and Mexico.

According to Mr. Scharps, he called upon the referee on July 3, 1940, and the matter of fees was the subject of that conference. Mr. Scharps said that the attorney of record and general counsel should be consulted and that the clients must approve any arrangement. His affidavit refers to part of his conversation with the referee as follows: " The Referee requested I proceed in taking up the matter with counsel and the clients because he had his mind made up about getting an agreement as to his fees at once. I pointed out to the Referee that I was not in a position to know how much time he claimed he had spent outside of the hearings and was now spending in considering his decision and that this information was really needed to form an opinion as to the amount of his fees. He answered that he wanted a round figure which he thought he should have and named $7,000.00 and said he did not want the counsel I was to see to do any haggling about it. I then told the Referee that I did not know what I could do; that I would take it up with counsel and if counsel approved the propriety of going ahead now, and the figure named, then I would take it up with the clients. Before leaving the Referee, I said I would get in touch with counsel during the following week and then communicate with him."

Mr. Scharps wrote to Mr. Barnett, then in Tennessee, and was directed to confer with Mr. Simon H. Rifkind, the defendants' general counsel, On July 8, 1940, Mr. Scharps was informed that Mr. Rifkind was out of town and would not return for several weeks. These facts were told to the referee by Mr. Scharps on July 12, 1940, and the latter said he would do no more work on the matter and would wait the result of Scharps' interview with counsel.

Due to Mr. Rifkind's absence from the city, Mr. Scharps was unable to confer with him until July 31, 1940. They discussed the matter that day and Mr. Scharps says Mr. Rifkind was of the opinion that it was improper to enter into any negotiations with the referee concerning his fees. Mr. Scharps later prepared a memorandum of law which he submitted to Mr. Rifkind on August 9, 1940, and both men agreed that steps should be taken to remove the referee but they decided to await the return of Mr. Barnett before taking any definite action. Before Mr. Barnett returned to the city, the report of the referee was filed. The defendants then moved for the removal of the referee, and the order from which they have now appealed was entered denying the motion.

The referee admitted that at the beginning of the reference he had asked counsel appearing for both parties to sign a stipulation waiving the statutory fees and allowing his compensation to be fixed by the court, but he denied that he ever demanded a fee of $7,000. He disputed the allegations contained in the affidavits of Mr. Barnett and Mr. Scharps in several respects but admitted that when Mr. Barnett and Mr. Scharps filed a memorandum brief he asked them for a stipulation on his fees. He alleges that on June 26, 1940, Mr. Barnett visited him alone and said he would have Mr. Scharps take care of everything as he (Barnett) was going away. Thereafter he said Mr. Scharps called upon him and said that he was not personally opposed to making a stipulation about fees but that he would have to consult general counsel for the company, who was then out of the city. Mr. Scharps on that occasion cited an old case holding that a referee was disqualified for taking a payment of his fees on account, and the referee told Mr. Scharps he knew of the ruling but it was of no concern to him as he had in no way sought a payment on account. The referee's affidavit then alleges: " I was making the usual request for a stipulation signed by both sides wherein the Court would fix and approve such fees as I would receive."

The referee claims he told Mr. Scharps that if a stipulation could not be procured permitting the court to fix the fees, the fees would then necessarily be those as fixed by the statute on the basis of the hours and days. The referee then mentioned to Mr. Scharps that

in the same case another referee, who had taken less testimony and spent less time on the matter, had received $7,000. The affidavit of the referee then states: " I said that a stipulation, signed by both sides, allowing the court to fix my fees, was the only way I would consider disposing of the matter."

It also appears that on July 17, 1940, the referee made an assignment of his fees as referee to the Peoples Industrial Bank and authorized the attorneys for the defendants to pay the bank the sum of $1,800 under the assignment. Notice of the assignment to the bank was given to the attorneys for all parties and the record indicates that the assignment was made at a time when the referee was exhibiting anxiety about the amount of his fees in his discussion with defendants' counsel.

The referee contends that the defendants are barred from obtaining the relief sought because they permitted the reference to proceed and did not move until after the filing of the referee's report. The motion of the defendants is based upon the request made by the referee when the testimony had been taken in full and briefs had been submitted by both parties. The demand for a fee of $7,000 was made at that time. The defendants have satisfactorily explained why the motion was not made immediately after the request, namely, that it was necessary to have defendants' attorney of record pass upon the situation and he was traveling in the south on an extended automobile tour. Trial counsel for the defendants was of the opinion he lacked authority to take drastic action. He consulted with general counsel for the defendants and it was decided that notice would be given to the referee that he had disqualified himself and that an application would be made for the appointment of another referee when the attorney of record returned to the city.

It should be noted that the referee admits the claim of the defendants' attorneys that Mr. Scharps had stated he did not think it was proper to discuss the matter of fees at a time when the report had not been filed and that a decision in which a report had been vacated and a new referee was appointed had been called to the attention of the referee. These facts undoubtedly indicated to the referee that his request was distasteful to the defendants and probably would not be granted.

Furthermore, the referee claims that these various conferences were being held between him and the attorney for the defendants in an effort to induce the defendants to stipulate to allow the court to fix his fees. Such a stipulation was wholly unnecessary in this case for the reason that the interlocutory order provided that the referee's fees were to be fixed in an amount to be approved by the court.

The courts have consistently held that where a referee places the parties to a controversy in the position of having either to grant or refuse his application for fees in excess of those to which he is legally entitled, he will be removed at the instance of the party refusing his request. (*Greenwood* v. *Marvin*, 29 Hun, 99; *Reynolds* v. *Moore*, 1 App. Div. 105; *Dickinson* v. *Earle*, 63 id. 134; *Smith* v. *Dunn*, 94 id. 429; *Roberts* v. *Evans*, 247 id. 409.) The reason for the rule is aptly stated in *Smith* v. *Dunn* (*supra*) as follows: "To justify the granting of this application it is not necessary that we should find that the referee was prejudiced or that any act of his showed prejudice against these defendants. But when he asked these parties to consent that his compensation be in excess of that allowed by law he placed himself in a position which allowed a party refusing that consent to feel that, as he had stood in the way of the referee receiving a pecuniary advantage, the fact of the refusal would influence the referee in his action during the litigation."

It is not necessary that actual corruption on the part of a referee be shown. Indiscreet action on the part of a referee from which improper inferences may be drawn is sufficient to warrant setting aside his report. (*Reynolds* v. *Moore, supra*.) It is unfortunate that the parties should be subjected to the expense of a new trial in which the result may be no different, but, as was pointed out in *Greenwood* v. *Marvin* (*supra*), it is better that there be expense and delay than that there be improper precedents.

In *Dickinson* v. *Earle* (*supra*) this court said: "We have to care for the public interest in the administration of justice as well as the protection of the rights of the individual suitor, and the performance of this duty requires us to see to it that no judgment based upon the report of a referee guilty of the misconduct here disclosed should stand as a judgment of the court."

In *Greenwood* v. *Marvin* (29 Hun, 99) the court said: "The policy of the law in guarding judicial trials from evil and the appearance of evil as well, require that such conduct as has been disclosed should be condemned, and that a report following such conduct should be set aside and the parties remitted to another trial. [Citing cases.]

"Confidence in the purity of the administration of the law cannot be maintained if such conduct be tolerated, and reports are allowed to stand, made by referees who start negotiations and stipulations for extra statutory fees, after a case has been submitted to them. * * *

"Referees ought, like jurors, to be vigilant to avoid evil, to avoid taking a line of conduct which may affect their freedom

of mind and neutrality in the cases under consideration. *Ex parte* treaties and conversations with either party as to any fact, point or fee ought to be avoided. Suitors have a right to an unbiased tribunal approaching the delicate duty of determining the facts and law of a case, uninfluenced by any solicitude or efforts to secure extra fees."

We wish to reiterate what we recently said in *Shorr* v. *Marwill Realty Corp.* (258 App. Div. 33): " A referee occupies a position similar to that of a judge, and it is essential that litigants have implicit confidence in his impartiality. There is seldom any obligation on the part of a member of the bar to act as referee when designated by the court. When he has agreed to act he must conduct himself throughout the proceeding in a manner that will not cast any reflection upon the administration of justice. Undue concern on the part of a referee regarding the amount of his fee, or security for the payment thereof, is, to say the least, injudicious and is not likely to inspire a feeling of confidence in the integrity of the referee. * * * "

If, as is suggested, the attorneys for the parties to this litigation desire to avoid undue delay and additional expense and wish to bring about a speedy determination of this action, they may submit the present record of the testimony to a referee to be appointed by the court and they may add such additional competent testimony as they deem necessary.

The order should be reversed, with twenty dollars costs and disbursements, and the defendants' motion granted.

GLENNON, UNTERMYER and COHN, JJ., concur; CALLAHAN, J., concurs in a separate memorandum, except in so far as the opinion holds that defendants have satisfactorily explained their delay in moving to disqualify the referee.

CALLAHAN, J. I agree in all respects with the opinion of the court except in so far as it holds that defendants have satisfactorily explained their delay in moving to disqualify the referee. On the contrary, I find that the record shows that defendants improperly waited until after the referee's decision was published before moving for his disqualification. Despite the fact that this delay is to be criticized I find that the referee has clearly disqualified himself and his report should be set aside.

Order unanimously reversed, with twenty dollars costs and disbursements, and motion granted.

Settle order on notice.