THE PEOPLE OF THE STATE OF NEW YORK ex rel. NEW YORK CENTRAL RAILROAD COMPANY, Appellant, against STATE TAX COMMISSION, Appellant-Respondent, and CITY OF NEW YORK, Intervener, Respondent. JAMES J. McGUINESS, as Referee, Respondent.

Appeals from an order of the Supreme Court at Special Term, entered February 16, 1952, in Albany County, insofar as it denied a motion by relator for an order vacating the Referee's report and an order which appointed him and appointing a new referee. In a prior decision (280 App. Div. 627) the Appellate Division withheld decision as to this part of the order, awaiting the main appeal.

Order entered February 16, 1952, insofar as it denies the motion to vacate and set aside the appointment, report, and opinion of the Referee affirmed, without costs. Memorandum: This court has heretofore reversed the order

of February 16, 1952, insofar as it denied relator-appellant's motion to set aside the ex parte order fixing the Referee's fees. (280 App. Div. 627.) While we do not approve of the methods employed by the Referee, after his report was completed and signed, in attempting to obtain his compensation, we find no conduct on the part of the Referee which warrants vacating his appointment and setting aside his report and opinion.

VAUGHAN and KIMBALL, JJ. (dissenting). We are unable to agree with the majority that the conduct on the part of the Referee does not warrant vacating the appointment and setting aside his report *in toto*.

The facts which prompt us to disagree are these: By order dated September 26, 1941, one James J. McGuiness was appointed Referee to hear, try and determine the issues in a proceeding brought to review relator's special franchise tax assessments in Park Avenue and vicinity, New York City, for the tax years 1925–1929 and 1937–1941–1942, both inclusive. Following the appointment of the Referee, the proceedings were suspended by agreement of the parties during the war, and the first hearing before the Referee was held on September 17, 1946, at which time it was stipulated " that the fees and disbursements of the Referee shall be fixed by the Court."

The trial proceeded intermittently, some hearings being held in the city of New York and some in the city of Albany, the final hearing being on October 27, 1950. Thereafter, briefs were submitted by the respective parties. It would appear that the Referee signed his opinion and report dismissing the writs of certiorari, confirmed the assessments and awarded costs and disbursements in favor of the intervener, respondent on May 15, 1951. The following day, May 16, 1951, the Referee made an ex parte application to an Associate Justice of the Appellate Division, Third Department, at chambers for an order fixing his fees. This application in the form of an affidavit of services was sworn to before said Justice who thereupon signed an order fixing the Referee's fees at $175,000 and disbursements at $3,535.86. This court (280 App. Div. 627) reversed the order fixing the Referee's fees, but reserved decision on the question of vacating the order of reference and decision because of misconduct of the Referee until the hearing and determination of the main appeal. The respondent city, relying upon the case of *Little* v. *Lynch* (99 N. Y. 112) stresses that there was nothing improper in the conduct of the Referee in the manner in which he obtained the order fixing his fees and disbursements and his subsequent conduct in approaching the intervener, respondent city for payment of the allowance made to him by the order of Mr. Justice HEFFERNAN.

Special counsel for the intervener, respondent city, realizing that the decision of the Referee was subject to change until delivery of the written report or filing thereof, sent a memorandum to John P. McGrath, Corporation Counsel of the City of New York, dated May 29, 1951, providing as follows:

" I have been advised by the Referee that he is ready to hand down a decision in favor of the City of New York. The assessments as made by the State Tax Commission are confirmed, and the writs of certiorari are dismissed. The City refunds nothing.

" The Referee has taken the position that his fees be paid as a condition of the delivery of the report to the prevailing party. This he has right to do. ' A referee is not bound to deliver his report without payment of his fees'. *Little* v. *Lynch*, 99 N. Y. 112.

" At the trial the parties stipulated ' that the fees and disbursements of the Referee shall be fixed by the' Court.' On May 16, 1951, Honorable Christopher

J. Heffernan, Justice of the Supreme Court, fixed the fees of the Referee herein at $175,000. Annexed hereto is a copy of the Order of Justice Heffernan.

" The City should pay this fee and thus obtain delivery of the report as soon as possible. *Once it has left the possession of the Referee it is no longer subject to change.* (Italics ours.)

" The decision awards costs and disbursements to the City as against the Relator, New York Central Railroad. Upon payment of the Referee's fees and disbursements (fees $175,000; disbursements $3,535.86, total $178,535.86) the City is entitled to include this amount in the bill of costs against the New York Central."

What negotiations, if any, took place between the City of New York and the Referee between the time when the demand was first made upon the city and May 29, 1951, the date of the memorandum, does not appear.

Having in mind that the Referee's written report until delivered or filed was subject to change, the corporation counsel was moved to write to the comptroller of the city of New York directing payment. We quote from that memorandum:

" Following my telephone conversation with you, I hand you herewith memorandum from Timothy F. Cohan, our special counsel in the certiorari proceeding involving special franchise assessments against the New York Central Railroad Company for Park Avenue, together with an order of the Supreme Court, Third Department, fixing the fees of James J. McGuiness at $175,000, plus disbursements of $3,535.86, making a total of $178,535.86. Mr. McGuiness is entitled to be paid his fees and disbursements before he files his report in this proceeding. * * *

" A check should be drawn to Mr. McGuiness for the fees and disbursements, and Mr. Cohan will then proceed to tax costs and to initiate steps to collect this money from the New York Central Railroad."

As a result, the money was paid on June 15, 1951, and four days thereafter the Referee's written report, together with the order fixing his fees, was filed in Albany County Clerk's office. Thereafter and on June 20, 1951, the Referee furnished relator with a copy of the opinion and report. Newspaper publicity in regard to the fee of $175,000 and its accelerated payment by the city caused relator to make an investigation which disclosed the above-related facts.

Payment by the city and acceptance by the Referee under the circumstances disclosed by this record, in our opinion, calls for vacation of the order of reference and setting aside the report.

The intervener city relies heavily upon the case of *Little* v. *Lynch* (99 N. Y. 112, *supra*) to justify the conduct of the Referee in approaching the intervener city for payment of his fees. The court in that case said (p. 114) : " A referee is not bound to deliver his report without payment of his fees. The interest of the *prevailing party* will generally secure the taking up of the report." (Emphasis supplied.)

Such language affords no justification for payment of the Referee's fees by the intervener City of New York. The Referee sought payment of his fees not from the State Tax Commission, the prevailing party, but from the intervener City of New York which was only in the proceeding by leave of the court and was not a necessary party. See *People ex rel. Niagara Falls Co.* v. *Russell* (57 Hun 53, 56) wherein the court said: " Under the statute the controversy is solely between the aggrieved tax payer and the assessors." Moreover the real question decided in the *Lynch* case (*supra*) was that a Referee's report had to be filed or delivered within sixty days after submission and that notice

to a party that it was ready to be delivered upon payment of the fee, was not a delivery and so, after the sixty days expired, motion to terminate the reference must be granted.

As already pointed out, it was stipulated that the Referee's fees were to be fixed by the court. As a matter of fact the fees were fixed by an Associate Justice of the Appellate Division who had only the powers of a justice out of court. The Referee demanded and received fees from the intervener in an ex parte application with no notice to any of the parties to the proceeding. He became, therefore, interested in the proceeding within the ban of section 14 of the Judiciary Law.

Where it was stipulated that the court should fix the compensation of the Referee, it was held that the Referee was thereby disqualified to fix allowances to the parties or their attorneys. The court said: "The fixation of such fee thus became subject to the suggestions to be made to the court by the parties and their attorneys. In such circumstances there may be a tendency to make the referee's fee proportionate to the allowances which have been fixed by the very referee who seeks pay for his services. The law does not permit the referee to occupy any such anomalous position." (*Chemical Bank & Trust Co.* v. *Williams*, 261 App. Div. 581, 583, affd. 287 N. Y. 696.)

Where a Referee becomes disqualified under section 14 of the Judiciary Law, the proceeding before him is "utterly void." The disqualification cannot even be overcome by consent of the parties. (*Moers* v. *Gilbert*, 175 Misc. 733, affd. 261 App. Div. 957.) In the *Moers* case, it was held there was no disqualification of the Referee but only because, although the attorneys had talks about the amount of the fee prior to the rendition of the report and agreed thereto, the Referee knew nothing about it and was in no way a party to the agreement. (See cases cited by EDER, J.)

In the order under review we have a situation where a Referee in disregard of a stipulation between the parties, proceeds on his own motion and without notice to the parties, to obtain an order fixing his fees and disbursements. He knew of the stipulation and is charged with knowledge that said Justice had no authority to make the order. The decision provides that his fees be charged to the relator. He made himself a party to the proceeding and interested in the result or outcome before he had fulfilled his duties as referee by filing his report. Until he filed his report or delivered the same to the State Tax Commission, the prevailing party, the matter was still pending before him and subject to change. The surreptitious and illegal manner in which he sought and obtained the fees from an intervener in the proceeding who in turn would seek to collect from the losing party, raises improper inferences.

The intervener city urges that the Referee having signed his report, nothing of a judicial nature remained. To our minds, such argument is not sound. It is immaterial whether the delivery or filing of his report is ministerial or judicial. (See *Leonard* v. *Mulry*, 93 N. Y. 392.) In performing such duty, he acts as a Referee.

The case of *Miles Labs.* v. *American Pharm. Co.* (261 App. Div. 108) is authority for vacating the report and terminating the reference. In that case, it was done merely because the Referee, in disregard of a stipulation that the court fix his fees, made a demand that the defendants (the losing parties) consent to a fee of $7,000 and because he had made an assignment of a part of the fee. In our case, he not only demanded a fee not fixed in accordance with the stipulation and without notice to any party but, in addi-

tion, he actually obtained payment of the same before his report became final and binding. In the *Miles* case, the court in the course of its opinion said (p. 113) : " It is not necessary that actual corruption on the part of a referee be shown. Indiscreet action on the part of a referee from which improper inferences may be drawn is sufficient to warrant setting aside his report."

We have already commented upon the dictum in *Little* v. *Lynch* (99 N. Y. 112, *supra*) that a Referee may hold his report until his fees are paid. It is interesting to note what was said in *Hebard* v. *City of New York* (137 App. Div. 752, 753) viz: " It is well settled, and is not disputed, that under ordinary circumstances a referee's right to fees does not accrue until he has completed the reference and filed or delivered his report. ( *Little* v. *Lynch*, 99 N. Y. 112; *Russell* v. *Lyth*, 66 App. Div. 290; *Bottome* v. *Neeley*, 124 id. 603.) "

In *Ament* v. *Schubert Piano Co.* (172 App. Div. 423) the report was vacated and the Referee removed. There the Referee near the end of the trial, demanded of the parties that they give security for his fee. He also accepted a fee of $2,500 from the defendant before the reference was completed. He had announced his determination in a written opinion and directed findings in accordance therewith. The court said (p. 425) : " The demanding and receiving his fees prior to the completion of his decision was even more reprehensible. It is well settled that under ordinary circumstances a referee's right to his fees does not accrue until he has completed the reference and filed or delivered his report. ( *Hebard* v. *City of New York*, 137 App. Div. 752.) He should not have requested nor accepted payment so long as there remained any duty of a judicial nature for him to perform."

See, also, *Topia Mining Co.* v. *Warfield* (145 App. Div. 422); *Smith* v. *Dunn* (94 App. Div. 429), and *Klein* v. *Klein's Outlet* (268 App. Div. 27). In the last-cited case, it was said (p. 28) : " The Referee's request for fees in excess of those allowed by the statute and defendants' refusal to stipulate for the payment of such fees, disqualified her from proceeding with the reference." In that case, it was held that because the defendants proceeded with the reference for a year thereafter, they had waived their objections to the qualifications of the Referee. MARTIN, P. J., dissented and voted to grant the motion to remove the Referee. In our case, the relator never had an opportunity to object to the amount of the fee which was illegally fixed and did not know of it or of the Referee's decision until after it was all over and the fee paid.

In *Schechter* v. *Atlas Shirt Co.* (86 N. Y. S. 2d 220), Justice AURELIO applied the rule as to arbitrators. (Civ. Prac. Act, § 1462.) He said that the standard of conduct required of arbitrators is at least as high as that required by referees. His opinion states (p. 222) : " It has been repeatedly held that it is improper for a referee to play a part in setting his own fee, since a party solicited by a referee to agree to allow him an enhanced fee might be delicate about refusing lest the refusal should prejudice such party in the mind of the referee."

In *Shorr* v. *Marwill Realty Corp.* (258 App. Div. 33, 34), the court uses this significant language: " A referee occupies a position similar to that of a judge, and it is essential that litigants have implicit confidence in his impartiality. There is seldom any obligation on the part of a member of the bar to act as referee when designated by the court. When he has agreed to act he must conduct himself throughout the proceeding in a manner that will not cast any reflection upon the administration of justice. Undue concern on the part of a referee regarding the amount of his fee, or security for the payment thereof, is, to say the least, injudicious and is not likely to inspire a feeling of

confidence in the integrity of the referee. We are convinced that the referee here participated in the fixing of his stipulated fee, and the record contains many instances evidencing an anxiety on his part regarding payment and security for payment of his fees. We condemn such an attitude, and caution referees acting in this Department against such conduct which must inevitably invite charges such as have been asserted in this case."

It is no answer to say that the Referee reached a correct conclusion and that a new reference would only incur additional large expense with a like result. Regardless of whether the report and decision was a correct one, we feel that this court should not fail to hold a Referee to the standard of conduct required of an impartial judicial officer.

The court in *Greenwood* v. *Marvin* (29 Hun 99, 104; HARDIN, J., writing) said: "A new trial in this case may be expensive and may not produce a different result. But it is better that there be expense and delay in this case, than that an improper precedent be made."

In *Voron* v. *Chait* (101 Misc. 366) the conduct of a Referee in bargaining with the parties for his fees was criticized by the Special Term in this language (p. 369): "Such conduct tends to commercialize the administration of justice and to bring it into contempt" and the court then proceeded to set aside the report stating (p. 371): "The court deeply regrets to be obliged to set aside a report based upon upwards of two thousand pages of testimony and in which large sums have already been expended for referee's and stenographer's fees, but the parties by their own acts have created a condition which leaves no alternative but to set aside the report."

In *Miles Labs.* v. *American Pharm. Co.* (261 App. Div. 108, *supra*) the court said (p. 113) "It is unfortunate that the parties should be subjected to the expense of a new trial in which the result may be no different, but, as was pointed out in *Greenwood* v. *Marvin* (*supra*), it is better that there be expense and delay than that there be improper precedents." The court then went on to make the suggestion that if the parties to the litigation desired to avoid unnecessary delay and additional expense that they could submit the record of the testimony to a new Referee to be appointed by the court, and add such additional competent testimony as they deem necessary.

We reach the conclusion that the report of the Referee should be vacated, the Referee removed, and a new Referee appointed. Only by so doing can we be said to be holding the line of fair and impartial judicial conduct.

All concur, except Vaughan and Kimball, JJ., who dissent and vote to vacate the report of the Referee, to remove the Referee, and to appoint a new Referee, in an opinion. Present — McCurn, P. J., Vaughan, Kimball. Piper and Wheeler, JJ.

Order entered February 16, 1952, insofar as it denies the motion to vacate and set aside the appointment, report, and opinion of the Referee affirmed, without costs. [201 Misc. 976.]