(63 App. Div. 134.)

DICKINSON v. EARLE et al.[1]

(Supreme Court, Appellate Division, First Department.  July 9, 1901.)

REFERENCE—MISCONDUCT OF REFEREE—SETTING ASIDE OF REPORT.

In an action by an assignee for creditors to obtain a judicial settlement of his account, the attorneys agreed that his account should be referred. At the commencement of the reference, plaintiff's attorney proposed a stipulation that the referee be allowed to fix his own fees. The referee stated that, if he made an unreasonable charge, objection might be made. A stipulation was then made that the referee might fix such fees for himself as were reasonable, and should not be limited to the statutory fee. After the case was submitted to the referee, and before the decision, he presented a written stipulation to the attorney of one of the defendants fixing his fees at $20 per day, saying that the plaintiff assented, which the attorney refused to sign. The referee demanded and received from a stenographer who took the testimony in the case before him one-third of the stenographer's fees, paid by the parties to the action. The referee reported, awarding a large sum to plaintiff. *Held*, that the award was properly set aside for misconduct of the referee.

Appeal from special term, New York county.

Action by Charles C. Dickinson, as assignee, etc., against Eugene M. Earle and others. From an order setting aside a referee's report, and vacating a judgment entered thereon, plaintiff appeals. Affirmed.

See 54 N. Y. Supp. 475.

Argued before VAN BRUNT, P. J., and PATTERSON, O'BRIEN, INGRAHAM, and LAUGHLIN, JJ.

H. D. Luce, for appellant.

Benjamin N. Cardozo, for respondents.

INGRAHAM, J. This action was brought to settle the accounts of the plaintiff as assignee for the benefit of creditors. The defendants Eugene M. Earle and William Pitt Earle had made an assignment to the plaintiff. After the execution of the assignment the assignors settled with their creditors, so that the only question presented upon this accounting was as to the amount to be allowed to the assignee for his compensation and disbursements. The trial of the action was referred to a referee. The hearings commenced on the 25th of July, 1898, and proceeded from time to time until the 14th of November, 1900, when the case was submitted. The referee made his report on the 30th of March, 1901. It appeared from the affidavits upon which this motion was made that at the first hearing before the referee the plaintiff's attorney proposed a stipulation to the effect that the referee might fix the amount of his fees; that thereupon one of the attorneys for the defendants stated that such a stipulation would have no valid effect, and that the only way to make a stipulation binding upon the parties was to have the rate per diem stated therein; that the referee then stated that, if he made an unreasonable charge, he would expect to have his fees objected to and reduced; and that thereupon a stipulation was dictated and entered in the minutes to the effect that the referee might fix such fees for himself in the matter as might be reason-

[1] For lower court opinion, see 71 N. Y. Supp. 755.

able, and in doing so should not be limited to the legal statutory fee. There was, however, no mention made at the time of $20 per day, or of any other fixed sum. Here, at the commencement of the reference, counsel for the plaintiff in an action for his accounting as assignee, when the expenses of the accounting would come out of the assigned estate, would require the defendants to pay them, and suggested in the presence of the referee that a stipulation be made by which the referee should be allowed to fix his own fee. It can be seen in what an unfair position this placed the attorney for the adverse party. It was entirely immaterial to the plaintiff what the fees of the referee should be, as he would not have to pay them. And yet, if the defendants refused to consent to such a stipulation, they were required to try the case before a referee after they had refused to consent that his compensation should be in excess of his legal fees, and the amount of whose compensation might depend upon the party in whose favor he decided the case; as the defendants, having refused to consent to the enlarged compensation, would not pay more than the legal fees, while the plaintiff, having expressed a willingness to consent that the referee should fix his own fees, would not be likely to object to any charge that the referee might make. There was, however, no stipulation, written or oral, that the referee should receive $20 a day. The reference then proceeded for upward of two years. After the case was submitted to the referee, and before the decision, the referee called at the office of the attorneys for one of the defendants, and presented a written stipulation fixing the amount of his fees at the sum of $20 a day for each day spent on the hearing or in the examination of the case and for each adjournment, stating that the plaintiff was willing to consent. This stipulation the defendants' attorneys refused to sign. Subsequently the referee filed his report in favor of the plaintiff, allowing the plaintiff upward of $21,000 for his compensation and counsel fees. The referee then claimed to be entitled to $20 per day, amounting to the sum of $5,180. Of this amount $1,000 had been paid by the defendants during the progress of the reference, and the balance, $4,180, was paid by the plaintiff upon the delivery of the report. These fees were objected to upon taxation, and were reduced to the sum of $2,590, and that taxation was affirmed by the special term.

The referee in this case had not been selected by the consent of the parties. He was appointed by the court, and stood in the position of a judge. We think it was improper for the counsel for one of the parties, in the presence of the referee, to propose a stipulation which would allow the referee to determine the amount of his fees. The plaintiff could afford to be most liberal in his stipulation as to the fees to be paid to the referee, as he would not be called upon to pay them. That such a proposition would not affect a high-minded man in his decision of the case does not make the proposition any the less objectionable. The law fixes the compensation of referees in an action of this kind. He is entitled to $10 for each day spent in the reference, including the time occupied by him in determining the case; and while it is unobjectionable where

the parties, without constraint, consent to pay to the referee a sum in excess of that allowed by law, where the amount involved or the questions to be determined justify it, it certainly is improper for counsel for one of the parties, without previous consultation with his opponents, and especially where he will not be called upon to pay the referee's fees, to offer to make, in the presence of the referee, a stipulation which would impose upon the other party the payment of an amount largely in excess of that allowed by law for the services to be rendered, and impose upon him the necessity of either having to refuse to sign the stipulation, or, by signing it, have to pay the additional fee. But this is not all. After the case was submitted to the referee, he went to the counsel for the defendants, and presented a stipulation by which he would be entitled to receive double the fees allowed by law for the services that he had rendered, stating that the plaintiff would sign it. The gross impropriety of such action on the part of the referee is apparent. When about to decide the case, he asks one of the parties to the suit to pay him a large gratuity, doubling the amount that he was by law entitled to receive for the services rendered; and then, after the attorneys for the defendants had refused to sign this stipulation, he decided the case in favor of the plaintiff, fixed his fees at the amount that the defendants had refused to agree to, and received that amount from the plaintiff when he delivered his report. Can it be said that a referee who would make such a demand upon the attorneys for one of the parties to a litigation which was before him for decision was not influenced by the refusal to accede to his illegal demand? We cannot tell what the decision would have been if the attorney for the defendants had signed the stipulation, or had offered to pay the referee $40 per day. We know that no report should be allowed to stand when made after such a demand by the referee.

Another fact appeared, of which the defendants or their attorneys were first informed after the judgment upon the referee's report had been entered. At the commencement of the reference a stenographer was employed, and it was agreed that his fees should be paid one-half by each of the parties, and that the amount paid should be taxed as a disbursement in the action. After a few sessions this stenographer was taken sick, when another stenographer was employed in his place; and I take the statement of the referee in an affidavit submitted by him as to his dealings with these two stenographers. The first stenographer employed, Mr. Copp, was sent to the referee to be employed upon another reference. After a talk with Copp as to the work to be performed, the referee testifies that Copp said to him, "I will allow you one-third of my fees." When the reference in this case was commenced, Copp seems to have been selected by the referee as the stenographer, and continued as such until he became ill. Copp then told the referee that he would send a Mr. Haynes to go on with the work, and that he (Copp) had explained or would explain to Haynes the arrangement between Copp and the referee, and would get Haynes to consent thereto. Haynes then appeared and acted as stenographer. At the end of the first hearing, or shortly after, the

referee asked Haynes if Copp had told him of the arrangement between the stenographer and the referee, to which Haynes replied that he had not. The referee then told Haynes that he might consider himself the stenographer in the case until the finish, and Haynes then asked the referee what the arrangement was, to which the referee replied that Copp had, without any solicitation on the part of the referee, agreed to give him one-third of his fees. To that Haynes said, "Well, as long as I know I am to be the stenographer in the case, I will give one-third." This is the statement of the referee. The deposition of Haynes was taken under an order of the court. He testifies that the referee on one occasion said to him: "I suppose you know the understanding between Copp and me?" To which Haynes replied that he did not know of any understanding at all. The referee then said: "Well, Copp gives me one-third of his fees." To which Haynes said: "I cannot do any such thing as that, Mr. O'Brian. That is a thing I could not think of doing. I have never paid a referee any commission at all, and, if I did so, why, such an amount as that is out of all reason and out of all conscience." But, after further talk, Haynes agreed to allow Copp, or the referee for Copp, one-third of his charge for performing the services. Haynes further testified that he never told any of the counsel for the defendants, or the defendants, about it until after the referee had made his report; that he paid the referee under this arrangement about $500, and produced a check indorsed by the referee for one of the payments. Haynes also produced a letter written by the referee, which is as follows:

"My Dear Haynes: Congratulations. Am damned hard up. Wish you would send me check indorsed correct as to indorsement. I make 8,137 folios, at 8⅓, $511.08, of which I have had $296, leaving $215.08. Send me check so that I get it to-morrow morning.
"Yours, sincerely, M. O'Brian."

The subject of congratulations was that Haynes had received the last check due from the defendants for his services rendered as stenographer. Haynes also stated that he had been informed by Copp that the parties had paid his fees to the referee, but that the referee had not turned them over to Copp, and that the referee gave him to understand that unless he consented to pay him a part of the fees he would not get the appointment as stenographer to report the action. This statement, however, the referee denies, stating that the payment was entirely voluntary on the part of the stenographer. But little need be said as to the character of a voluntary payment made under these circumstances, and made on the demand of the officer who has the power of appointment. The referee admits that he first suggested to Haynes the propriety or necessity of making this "voluntary payment"; that Haynes first objected to making it, but finally assented; and the letter to Haynes asking for the final payment is inconsistent with the idea of a voluntary payment. We thus have a referee, after the case is submitted to him for decision, demanding a stipulation which in effect gives him as a gratuity a large sum of money, who has demanded and received from a stenographer employed to take the minutes of the testimony before him the third of the fees

paid to the stenographer by the parties to the action, and who subsequently files a report awarding a large sum against the person from whom he has demanded the stipulation for the additional fees; and the question presented is whether this report is to be allowed to stand as the basis of a judgment of this court. It would seem that a statement of the question answers itself. Our first duty is to enforce the rules which are essential to the pure administration of justice. The courts of this state have invariably set aside the report of a referee whose conduct has been such that from it improper inferences could be drawn, and usually there have been but indiscretions or innocent mistakes on the part of a referee; but even in such cases the courts have been astute in the enforcement of the rule that no report of a referee should be allowed to stand where his action had been such that the fairness of his decision could be justly questioned. Reynolds v. Moore, 1 App. Div. 108, 37 N. Y. Supp. 72, and cases cited; Fortunato v. City of New York, 31 App. Div. 271, 52 N. Y. Supp. 872. This case is one, fortunately extremely rare, where the referee has shown an entire lack of that spirit which should animate a person employed in the administration of justice, using his position as referee to extort from the parties and the employés illicit gain for himself, in a way that is absolutely inconsistent with the integrity that should be shown by those who have to do with the administration of justice. The plaintiff insists that he should not be punished because of this action of the referee. We have to care for the public interest in the administration of justice, as well as the protection of the rights of the individual suitor, and the performance of this duty requires us to see to it that no judgment based upon the report of a referee guilty of the misconduct here disclosed should stand as a judgment of the court.

The order appealed from should therefore be affirmed, with $10 costs and disbursements. All concur.