Habéis, J.
(dissenting). The Municipal Housing Authority of the City of Utica appeals from an order of the County Court of the County of Oneida, which order dismissed the *189 objections to a report of commissioners in condemnation and approved and confirmed the report ^ of such commissioners. The order further directed the payment to the commissioners of certain fees by the property owners in excess of the rate provided for by statute (Condemnation Law, § 14). The objections before the County Court, the disposition of which is now on review before this court, were based on the following enumerated contentions of the Authority (appellant here): A. That the report of the commissioners failed to disclose the rules adopted by the commission, the method of approach of valuation pursued by the commission and the elements of value given consideration by the commission. B. The awards were so excessive as to shock the sense of justice and are without foundation in law. C. Rulings of the commission on evidence. D. Bias and prejudice of commissioners: such claim of bias and prejudice is based on what is claimed to be the knowledge of one of the commissioners (Frank A. Dellecese) kept hidden from the Authority and the claim by the commissioners to, and the allowance by the court of, fees in excess of statutory provisions.
The condemnation proceeding was brought by the Municipal Housing Authority of the City of Utica, New York (appellant here) and known herein as “ Authority ” to acquire a large tract of real property located in the second ward of the' city of Utica, to be used as a site for a municipal housing, project. The Authority was set up under the Public Housing Law. The parcels of which are of concern in this proceeding were only two of a number of parcels contained in the proposed site. Information was given on argument here that the larger part of the proposed site was obtained by negotiations between the owners and the Authority, and other portions were the subject of separate condemnation proceedings. This particular condemnation proceeding, which the court now has before it, was for the purpose of acquiring certain premises located at (1) 228-230 Whitesboro Street, and (2) 232-23A-236 Whitesboro Street. For the first mentioned parcel, the commissioners awarded the sum of $19,934.90, and for the second mentioned parcel the award was $17,555.45.
The three commissioners were J. Herbert Gilroy, former Corporation Counsel of the City of Utica, and for a period of time a Justice of the Supreme Court of the State of New York, Edwin T. Ellen, a realtor of large experience, and the above-mentioned Frank A. Dellecese, a general building contractor, active in that type of work for more than thirty-five *190 years in the city of Utica. The appointment of the commissioners was made by the Oneida County Judge. There is no question raised as to the general honesty, experience, character and civic standing of any of the three commissioners.
After taking the oath of office, the commissioners proceeded to perform their duties and were attended by the parties and their respective counsel. The County Judge has found that some thirty-six days were spent by the commissioners in this matter. The proceeding before the commissioners was conducted by the counsel of the Authority, and on this appeal the appellant has asked and has had the services of the Corporation Counsel of the City of Utica.
Testimony as to value was taken from some fifteen witnesses on behalf of the owners, and some six witnesses on behalf of the Authority. From these witnesses was adduced several hundred pages of testimony as to the construction, age, depreciation, present condition, former and possible uses of the premises and their appurtenances and of the current and possible income of such premises, the appearance, photographic and otherwise, reproduction costs, and the other elements that usually go to make up like testimony. The premises were visited and examined by the commissioners. On the conclusion of the testimony, it was apparent that each group of witnesses differed from the other as to the values of the premises and their appurtenances and of the method of approach in reaching such values by such witnesses. The assessed valuation as proven was $7,000 for the premises 232-236 Whitesboro Street and $7,500 for the premises 228-230 Whitesboro Street. A summary of the values given by the Authority’s witnesses, as to premises 228-230, is $11,218.61 by one witness, and $8,000 by another, and as given by witnesses testifying on behalf of the owners the values on this piece of property range from $28,280 to $34,000; as to the premises 232-236 Whitesboro Street, the Authority’s witnesses gave a range from $7,500 to $8,916.09, and the owners produced testimony of a range from $19,500 to $28,232; some of this testimony applying only to value of the structures. The awards, as has been said, were for 228-230 Whitesboro Street, $19,134.90, and for 232-234r-236 Whitesboro Street, $17,555.45.
The rule that has been established and must be considered in passing on the general question of confirming or refusing to confirm the awards on account of amounts, is whether the sum awarded is grossly out of line with any proof that the commissioners could have adopted as reliable or that some *191 error of law or principle was folloAved by the commissioners in reaching such values. A court does not interpose its idea of value as against that of the commissioners when the proof in the record can sustain the amounts found by the commissioners, because the commissioners in carrying out their duties have seen and heard the witnesses and examined the premises, while the court before Avhich confirmation is sought or avoidance of the award is sought and an appellate court has before it only the record of testimony and exhibits. (City of Plattsburgh v. Kellogg, 254 App. Div. 455; Matter of City of Rochester [Smith St. Bridge], 234 App. Div. 583; Adirondack Light & Power Corp. v. Evans, 226 App. Div. 490; Matter of Thompson, 121 N. Y. 277; Cornish v. Village of South Nyack, 136 N. Y. 390; City of Syracuse v. Stacey, 45 App. Div. 249.)
The commissioners in their report to the County Court detailed the method in which they performed their duties and stated that what they have found to be the fair and marketable value of the premises is “ the price which we deemed and found the premises would bring in the market Avhen offered for sale by one Avho desired but was not obliged to sell, and when purchased by one who was not compelled to buy. This conclusion was reached by us on the impressions which we gained by vieAving the premises, our own general knowledge of values gained .from practical experience, and after having given due consideration to the competent evidence offered by the experts and witnesses produced by the respective parties.” As has been said, one of the objections raised to the report and its confirmation is that <£ the commissioners * * * did not take into consideration any elements except reproduction costs, less depreciation, in their report which fails to comply Avith the law.” Under this point, the Authority (appellant) argues that the commissioners did not take into consideration all of the elements required by law, and detail the various grounds and bases of value, and especially that the commissioners disregarded actual income and expenses of the property. As to the question of income and expenses, the commissioners had before them proof on these factors. They could also take cognizance of the fact that net income, estimated or otherAvise, is not always a substantial basis for the determination of value because, especially over the past many years, net incomes have been subject to the effects of war, deprecia-' tion, inflation and ceiling prices, all of which tend to produce artificially fixed rent income. In some cases income may be *192 a substantial factor and in some cases not. There is no showing here that the commissioners failed to consider the testimony on income before them. The approach, above quoted from the report, as taken by the commissioners is a generalization sufficiently full to establish that in making the awards the commissioners had in mind all of the elements on which they could and should have determined values. The amounts awarded are sustained by evidence on which the commissioners had a right to rely, and even though they be high compared to some of the estimates given in the testimony, it cannot be said that they are excessive sufficiently to warrant either disapproval of the report or a reduction by this court of the amounts of the awards.
As to the admission of evidence or its rejection, there appears to be only one question of evidence which could be objectionable, and that is that both parties were permitted, each over the objection of the other, to make proof concerning other parcels of land in the appropriated area and the amounts paid for such appropriation. Such evidence would not be a fair index of market values and the commissioners after the submission of all of the evidence and before proceeding for deliberation properly struck from the record such inadmissible evidence, and they specifically say in their report that they did not. consider the same. In reference to evidence,- there appears no other serious question in the record.
Bias and prejudice on the part of the commissioners could, as a matter of law, be sufficient to afford a basis for the rejection of their report if such bias and prejudice did exist. The Authority (appellant) claims that bias and prejudice did exist, and it bases such contention on the following: Early in the hearing it developed that one of the commissioners (Dellecese) had■ twenty-eight years prior to the time of the hearing* as a contractor, constructed part of the premises in the rear of 228-230 Whitesboro Street; such construction was for an uncle of the respondent Benjamin Bosenblum who,, at that time, twenty years previous to the hearing, was the owner of the premises at those numbers. Such information became available to the Authority early in the hearing and apparently counsel for the Authority (appellant) then attached no importance to the fact. There is nothing in the record that shows Mr. Dellecese was in any way influenced as a commissioner by his construction of part of the premises. What occurred there is likely to happen in any large city in the course of the business life of any busy contractor, and it might well be said *193 that Mr. Dellecese’s knowledge attained when he did construct a portion of the premises could add to his value as a commissioner.
The further objection in reference to bias and prejudice is in reference to the allowance for fees to the commissioners. The record of the hearing shows that, prior to the taking of any testimony, the following colloquy and proceeding occurred:
“ Mr. Quinn: If the Commission please, I think we should start at the beginning here in regard to making certain stipulations. I believe it is stipulated by the parties that the Commissioners receive the statutory fees for each day they shall meet. (Discussion not for the record.)
Mr. Quinn: Then it is stipulated that the Commissioners receive a fee of thirty-five dollars for each day they shall meet and in considering the testimony and in viewing the premises.
(X)
Mr. Capecelatro: So stipulated.
Mr. Penberthy: So stipulated.
Mr. Quinn: And it is also stipulated that Mrs. Louise Rath, as stenographer, shall receive the sum of ninety cents per page for transcript of the minutes and the furnishing of five sets — one of which shall be furnished to each of the Commissioners and that the cost of same shall be added to the disbursements of the Commission.
(X)
(At the opening of the p. m. Session, I believe, the stipulation which follows was entered into by all parties to supersede the stipulations above, to be inserted in the record at the place marked (X) above. This stipulation was written in shorthand at length around the margin of my record and sandwiched in in very small writing, due to the fact that the room was inadequate to write it otherwise at the place where it was to appear in the typewritten record. This was done before any formal proof was taken.)
Mr. Quinn: It is hereby stipulated by and between counsel for the respective parties, that is to say, The Municipal Housing Authority on the one side, and Benjamin and Frieda Rosenblum, on the other side, that a remuneration for the Commissioners on the basis of $25 per diem, having regard for the standing, reputation and erudition of the Commissioners is insufficient and therefore it is agreed between counsel for the respective parties, that in the event that counsel for the Municipal Housing Authority can legally stipulate for payment on behalf of the Municipal Housing Authority of a per diem fee *194 of fifty dollars per day to the Commissioners that that per diem rate shall be paid to such Commissioners, for every day they have attended and for every day that they have devoted to the study of the record and the rendering of their opinion and/or decision herein.
In the event that the Municipal Housing Authority is bound by the statute to pay not to exceed twenty-five dollars per diem to the Commissioners, then the difference between twenty-five dollars per diem and the stipulated sum of fifty dollars per diem shall be assumed and paid by Benjamin Rosenblum and Frieda Rosenblum.
Mr. Capecelatro: It is so stipulated.
Mr. Penberthy: I so stipulate.
Mr. Quinn: And it is also stipulated that Mrs; Louise Rath, as stenographer, shall receive the sum of ninety cents per page for transcript of the minutes and the furnishing of five sets — one of which shall be furnished to each of the Commissioners and that the cost of same shall be added to the disbursements of the Commission.
Mr. Capecelatro: It is so stipulated.
Mr. Penberthy: I will so stipulate."”
The matter in parenthesis above is apparently a note made by the chairman of the commission.
On his motion to reject the report, counsel for the Authority-appellant now claims that the above-quoted portion of the record is not accurate or full, his contention being that the commissioners had approached counsel before testimony was taken with the request for extra allowances. This is denied by' the commissioners and the counsel for' the respondents- , owners. The question of fact on this dispute was determined by the County Court against the Authority-appellant, and such decision of the County Court on this question is amply supported by proof before that court. However, conceding for the sake of argument that there was a demand by the commissioners for a stipulation of larger fees, there is then before the court this: The parties to the proceeding were entitled to fair, cold and impartial judgment of the commissioners and it could well be that, if the commissioners had insisted on extra compensation, such impartial service could not be given. For that reason the courts have frowned on efforts of referees and commissioners to force agreements' for allowances larger than provided by law and *195 have looked with suspicion (no matter how highly regarded these officers were as individuals) on such efforts, especially when it is apparent that one of the parties to the litigation seemed to curry favor from the one who is acting as a judicial officer. (Roberts v. Evans, 247 App. Div. 409; Rensselaer County Agricultural Soc. v. Weatherwax, 229 App. Div. 30; Smith v. Dunn, 94 App. Div. 429; Dickinson v. Earle, 63 App. Div. 134.) However, here before us, we have no such suspicious situation. When it is all said and done, the record discloses that the counsel for the Authority-appellant freely .entered into the stipulation and, if it be argued that he did so because the other parties to the stipulation were seeking favor, then he himself could be accused of seeking favor by his action. In view of the decision of the County Court on this dispute, which decision has been supported by sufficient proof, this court does not feel warranted in taking a view different from that of the County Court of what occurred before the taking of testimony as to extra compensation. It is true that the counsel for the Authority-appellant could not stipulate away any rights of his client (City of Oswego v. Montcalm Dock Co., Inc., 245 App. Div. 555), but he was not permitted to play with the commissioners or" speculate on the result of their hearing and their determination after a long and expensive proceeding. If, at the time that the counsel for the Authority-appellant was advised of what he now claims to be, the disqualification of Mr. Delleeese in particular, and the bias of the three commissioners, he should have at the time that he was so advised of each such situation moved for vacating the order naming the commissioners and for the appointment of new commissioners. The fact that he did not so move is sufficient to further convince a court that there was no bias, prejudice or disqualification. It would be fair to assume that when the stipulation was made counsel to both sides of the litigation felt that they had a right to make such stipulation. Appropriate to the matter now being discussed is the following quotation from Matter of Bd. of Supervisors (Baldwin), (270 N. Y. 16): “ We find no substantial error of law in the proceedings, and the finding of damage by the commissioners is conclusive. The question of whether one or more of the commissioners may have received greater compensation and allowance for expenses than the law allows is not directly presented upon this appeal. It does not appear that more was asked or allowed than the parties assumed was authorized by law and error there would not disqualify the. *196 commissioners as matter of law. Even though there may be justifiable criticism in regard to some matters connected with the proceeding no actual bias or interest has been conclusively shown. ”
A careful examination of the record and the thoughts developed arid expressed above require that the order of the County Court should be affirmed, with costs.
All concur in Per Curiam opinion except Harris and McCurn, JJ., who dissent and vote for affirmance in an opinion by Harris, J. Present — Taylor, P. J., Dowling, Harris, McCurn and Love, JJ.
Final order reversed on the law and facts with costs, motion to confirm report denied and report of commissioners set aside, and matter remitted to the Oneida County Court for further proceedings in accordance with the opinion. Appeal from order dated April 7, 1944, dismissed as academic.