THE PEOPLE OF THE STATE OF NEW YORK ex rel. NEW YORK CENTRAL RAILROAD COMPANY, Relator, against STATE TAX COMMISSION, Respondent, and CITY OF NEW YORK, Intervener.

Supreme Court, Special Term, Albany County, February 6, 1952.

*Gerald E. Dwyer, Clyde Brown, Jr.,* and *L. P. Gagliardi* for relator.

*Nathaniel L. Goldstein, Attorney-General (Edward J. Grogan, Jr.,* of counsel), for respondent.

*John P. McGrath, Corporation Counsel (Michael A. Castaldi* of counsel), for intervener.

*Ralph S. Leonard* and *Harold E. Blodgett* for James J. McGuiness, referee.

TAYLOR, J. By this motion brought on by an order to show cause, the relator seeks to vacate and set aside the ex parte order made by Mr. Justice HEFFERNAN dated May 16, 1951, which fixed the fees and disbursements of the Referee who had been appointed to hear and determine the issues raised by the petitions and returns in proceedings in certiorari to review the relator's special franchise assessments in the city of New York, to vacate his decision, to revoke his appointment and to supersede him with a new referee. The grounds urged as bases for the relief which is sought are the lack of power of the Justice to sign the order, his arbitrariness, unreasonableness, capriciousness and abuse of discretion in so doing and the misconduct of the Referee in obtaining the order and in exacting payment of his fees and disbursements as a condition for the delivery of his decision.

The Referee was appointed by order dated September 26, 1941. By agreement of the parties the proceedings were suspended for the war period. The first hearing took place on September 17, 1946, at which it was stipulated " that the fees and disbursements of the Referee shall be fixed by the Court." The last hearing took place on October 27, 1950, after which briefs were submitted to the Referee by the parties. On May 15, 1951, the Referee signed his decision which was favorable to the intervener, City of New York. On the following day on

his ex parte application, Mr. Justice HEFFERNAN, who was then serving by designation of the Governor of the State as an appellate Justice in the third judicial department, granted at his chambers in the fourth judicial district an order fixing his fees in the amount of $175,000 and his disbursements in the sum of $3,535.86. Thereafter the Referee advised the special counsel for the intervener in these proceedings of the fixation of his fees and disbursements by that order. The latter by a memorandum informed the corporation counsel of his client of the Referee's decision dismissing the writs, of the amount of the Referee's fees and disbursements so fixed and of the Referee's position that payment thereof would be a condition precedent to the delivery of his decision to the prevailing party. The special counsel urged compliance with the imposed condition. On May 31, 1951, the corporation counsel informed the comptroller of the intervener of the decision, enclosed the special counsel's memorandum and a copy of Mr. Justice HEFFERNAN's order and recommended payment which was soon thereafter made. On June 19, 1951, the decision of the Referee, his affidavit showing the services which he claimed to have performed and the order granted thereon were filed in the office of the Albany County Clerk. On June 20, 1951, the relator received a copy of the decision but not of the affidavit and order. It asserts that it learned of the order through the medium of the press which gave wide publicity to the large fee which was awarded.

The powers which a Justice of the Appellate Division of the Supreme Court may exercise while serving as such are stated in section 2 of article VI of the Constitution of the State as follows: " No justice of the appellate division shall, within the department to which he may be designated to perform the duties of an appellate justice, exercise any of the powers of a justice of the supreme court, *other than those of a justice out of court,* and those pertaining to the appellate division, except that he may decide causes or proceedings theretofore submitted, or hear and decide motions submitted by consent of counsel ". (Emphasis supplied.) In *Owasco Lake Cemetery* v. *Teller* (110 App. Div. 450, 452) in construing similar language of a prior Constitution it was said: " it was not the intention of the framers of the Constitution to permit a justice of the Appellate Division to hold a court for the hearing of motions, or to exercise any of the powers of a justice of the Supreme Court, other than those which may be exercised by a justice at chambers ". The powers granted to and the restrictions imposed on an appellate Justice were stated in *Williamson* v.

*Randolph* (111 App. Div. 539, 540, affd. 185 N. Y. 603) in these words: " Under this provision of the Constitution a designation of a justice of the Supreme Court to the Appellate Division at once suspends his power to preside at the Special or Trial Terms, and during the period for which he was so designated he can perform no judicial function except as specially authorized by the Constitution." The Court of Appeals has used the following language in defining the powers of an appellate Justice under the Constitution: " The object of the limitation placed by the Revised Constitution upon the power of justices of the Appellate Divisions, was to save their time for appellate work by preventing them from holding any court, other than that to which they are specially assigned. They can, however, exercise all the powers which an unassigned justice of the Supreme Court can exercise out of court. They have the same powers out of court that they had before their designation." *(People* v. *Hall,* 169 N. Y. 184, 194–195.) It has thus long been well settled that an assigned appellate Justice with exceptions not important to this determination may only perform the judicial functions and may only exercise the judicial powers of a Supreme Court Justice at chambers.

The stipulation of the parties required that the fees and disbursements of the Referee be fixed by the court. The relator contends that the application for that purpose could only have been made at a regularly stated special term on notice to the interested parties. A comparatively recent decision of the Court of Appeals construed similar terminology to the contrary. In *Matter of Gillespie (Rondout Riparian Section, Nos. 3, 4, 5 and 6)* (64 N. Y. S. 2d 706, revd. 271 App. Div. 767, affd. 296 N. Y. 989) the motion was to vacate and set aside an ex parte order extending the time of the terms of office of commissioners of appraisal, which order was made by a court at chambers, on the ground *inter alia* that such an application was required pursuant to section K 41–14.0 of the Administrative Code of the City of New York which governed the procedure, to be made at a regularly designated special term on notice. The applicable provisions of that code were as follows: " *the supreme court upon application* and good reasons shown therefor may extend the time for the taking of testimony or for the preparation and filing of such report, or both, beyond one year for a period not exceeding eight months." (Emphasis supplied.) The Special Term held " that an application to extend the life of commissioners of appraisal must be made to the Supreme Court at a regular stated Special Term upon notice to all parties inter-

ested." (P. 713.) The Appellate Division of this department reversed. It said, among other things, in its memorandum decision: " The fundamental question involved on these appeals is whether the order of extension by Mr. Justice ELSWORTH was valid. This depends first upon whether such an order can be made without notice, and second, whether there was good cause to support the order as made. The Administrative Code of the City of New York makes no mention of notice in connection with such an order, and any requirement for notice would have to be read into the statute by implication. For several reasons we do not believe that notice was necessary. If the Legislature intended to require notice it would have been a simple matter to have said so, and its failure to do so is highly significant." A motion for leave to appeal to the Court of Appeals was granted and one of the questions certified thereto was: " Did Mr. Justice ELSWORTH have jurisdiction to grant without notice an order extending the Wertime Commission? " (271 App. Div. 852.) The Court of Appeals unanimously answered that question in the affirmative. The Administrative Code, like this stipulation, made no mention of notice in connection with the application. Any requirement for notice would have to be read into the stipulation by implication and as was said in the *Gillespie* case and must be said here if the parties intended to require notice it would have been a simple matter to have said so and their failure to do so is highly significant. So significant, I think, as to be controlling. I conclude that the motion to fix the Referee's fees need not have been made on notice. I have not overlooked *Matter of City of New York* v. *Every* (231 App. Div. 576) which was an appeal from an order denying an application to vacate an ex parte order which appointed a Referee to hear and report in proceedings in certiorari to review a large tax assessment. The reversal of the Special Term in that case was on the ground that the opposing party which had a substantial interest in the controversy was entitled to notice under the " common practice in this State." (P. 579.) The case at bar is distinguishable from the *Every* case for the reason that there is present here a procedural stipulation of the parties which on the authority of the *Gillespie* case must be construed to have dispensed with notice of the application.

The order recites that it was made by Mr. Justice HEFFERNAN at his chambers. The relator contends that since the stipulation of the parties required the application to be made to a court, an order made by a justice out of court contravened its provisions

and was therefore void. Section 129 of the Civil Practice Act reads as follows: "*Court orders made by supreme court justice out of court.* An order made by a justice of the supreme court, out of court, shall not be void on the ground that a statute or rule, in terms or in effect, requires the motion therefor to be made to, or authorizes the order to be made only by, such court, unless the order be made outside of a county or judicial district in which an application to the court for such order is authorized." A fortiori the stipulation of the parties in terms or in effect neither requires nor authorizes more than a statute or a rule. That section has been construed to have abolished "' the distinction between " court " and " judge's " orders in the Supreme Court when made by Supreme Court justices.'" (*Lang* v. *Dreyer,* 170 Misc. 207, 209; *Matter of Rockwood & Co.,* v. *Trop,* 211 App. Div. 421, 424.) The abolishment was one of substance and not of form. It is urged that the section is inapplicable because the order sought to be vacated was made outside of the county or judicial district in which the application was authorized to be made to the court. Rule 63 of the Rules of Civil Practice prescribes where motions both on notice and otherwise may be made. Since subdivision 6 of that rule was rescinded on October 15, 1949, the two last clauses of section 129 (*supra*) have no application to the order under attack and the validatory features of that statute as to it remain unimpaired. The result here reached does not extend through impermissible legislative enactment the constitutional powers of an appellate Justice.

The vacatur of the order is urged on the further ground that there is demonstrated the arbitrary and capricious abuse of the judicial discretion of the appellate Justice who made the order by his allowance of exorbitant fees to the Referee, by their fixation without notice or opportunity to be heard to the interested parties, by his disregard of the provisions of rule 61 of the Rules of Civil Practice and by his acting as an appellate Justice at chambers in the fourth judicial district when there were Supreme Court Justices sitting in the county of the venue of the proceeding. The proof does not sustain the relator's claim. It appears that the appellate Justice had before him the affidavit of the services which the Referee asserted he had performed in the proceeding. He had had long and varied trial and appellate judicial experience. It is not claimed that he was actuated by ulterior or improper motives. What is shown is a divergence of opinion between him and the unsuccessful party to the litigation as to what the Referee's fees should have been which, of course,

is completely insufficient to sustain a finding of arbitrary and capricious abuse of discretion. I have held that the order was properly made without notice. So the failure to require notice of the application obviously abused no discretion. Nor was the failure to require the Referee's affidavit in support of the order to state whether a previous application had been made — repeatedly held to be a mere irregularity — evidence of such. (*Matter of Gillespie* [*Rondout Riparian Section, Nos. 3, 4, 5 and 6*], *supra*; *Matter of Nat. Gramophone Corp.*, 82 App. Div. 593; *Bean* v. *Tonnelle*, 24 Hun 353; *Skinner* v. *Steele*, 88 Hun 307; *Pratt* v. *Bray*, 10 Misc. 445; *Terry* v. *Green*, 53 Misc. 10.) Finally, it was neither arbitrary, capricious nor abusive of discretion for the appellate Justice to have assumed the jurisdiction with which he was vested. Indeed, his plain duty would have permitted nothing less.

The contentions of the relator in support of the remaining phase of its motion whereby it seeks to annul the Referee's report, to remove him and to appoint a new Referee on the ground that his acts and conduct in the procurement of payment of his fees by the prevailing party before delivery of his report and decision establish injudiciousness and improprieties which within the contemplation of the authorities compel the granting of that relief are without merit. The facts in the case at bar are clearly distinguishable from those of the cases relied on by the relator to sustain its position. In those, of which *Miles Laboratories* v. *American Pharmaceutical Co.* (261 App. Div. 108) and *Robinson* v. *Ball* (187 App. Div. 799) are typical, the condemned and disqualifying conduct of the Referees involved ex parte negotiations regarding their fees or demands for the payment of compensation which exceeded the prevailing statutory rates or for security for payment during the pendency of the references and before the Referees had made their decisions. In this, the reference had been concluded except for the performance of one of the ministerial acts provided by section 470 of the Civil Practice Act before the Referee imposed the condition of payment; his decision had been made and signed; his legal fees had been fixed by order. There is judicial precedent which connotes no impropriety on the part of a Referee who refuses to deliver his report without payment of his fees. In *Little* v. *Lynch* (99 N. Y. 112, 114) it was said: " A referee is not bound to deliver his report without payment of his fees. The interest of the prevailing party will generally secure the taking up of the report. But if he fails to do so, the referee must then file it in order to prevent a termination of the refer-

ence by notice under the statute." This language was used in *Geib* v. *Topping* (83 N. Y. 46, 48): " The referee undoubtedly was not bound to part with the report without payment of his legal fees ".

The motion is denied in all respects and the stay contained in the order to show cause vacated.

Submit order.